UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CASE NO. 1:10-CR-0172-TWP-KPF |
| DAVID HAZEL, and ALLISON HAZEL, | ) ) | |
| Defendants. | ) | |

## ENTRY ON DEFENDANTS' MOTION TO SUPPRESS

This case is before the Court on Defendants' Motion to Suppress. Defendants, David Hazel ("Mr. Hazel") and Allison Hazel ("Mrs. Hazel") (collectively "the Hazels"), are charged with one count of knowingly manufacturing with intent to distribute more than one hundred marijuana plants. *See* 21 U.S.C. 841(a)(1) and 21 U.S.C. 841(b)(1)(B). This Court previously found that grounds existed to proceed with an actual Frank's hearing (Dkt. 55) and evidence was heard on January 5, 2012. The Hazels assert that an omitted material fact from the warrant affidavit obtained for the search of their home justifies suppression of the evidence found during the search. For the reasons set forth below, Defendants' Motion to Suppress is **DENIED**.

### I.  BACKGROUND

On May 13, 2010, around 6:40 p.m., the Hazels arrived at their home at 3805 Devon Drive, Indianapolis, Indiana ("the residence"). At approximately 6:46 p.m., IMPD received a call from Mrs. Hazel that a robbery was in progress at the residence. IMPD Officers, including Officer Horace Cox ("Officer Cox"), were dispatched to the residence. As the officers traveled to the residence, they received information from the dispatcher who was on the telephone with

1

Mrs. Hazel. The officers were made aware that there was a woman on the 911 call who could be heard screaming, and two male voices could be heard talking loudly in the background.

Officers Cox, Officer Michael Harmon ("Officer Harmon"), and Officer Robert McCauley ("Officer McCauley") arrived at the residence at approximately 6:50 p.m. Upon arrival, Officer Cox observed Mrs. Hazel exit the front door; she stated to Officer Cox that she had been robbed and her foot was broken. While Mrs. Hazel sat on the front porch, Officer Cox asked if anyone else was in the home. Mrs. Hazel then stood up and locked the front door. Officer Cox asked why she locked the door and she replied "habit." Mr. Hazel exited the front door a few minutes later and spoke with Officer Cox. Mr. Hazel was visibly shaken and injured, bleeding from the left side of his head.

When asked what happened, Mr. Hazel explained that when they arrived home and entered the front door Mrs. Hazel went up the stairs, where she encountered an unknown intruder standing at the top of the stairway. Frightened, she ran back down the stairs, falling and injuring her ankle in the process. At that time, the armed intruder came charging down the stairs at Mr. Hazel and struck him in the face with an object that turned out to be a firearm. Mr. Hazel and the armed intruder continued to struggle, until the intruder fled from the residence on foot. Mr. Hazel was able to seize the firearm during the struggle.

A medic arrived at the residence to assist, however, the Hazels refused to go to the hospital by ambulance; instead, they wanted to drive themselves. While the Hazels received medical treatment for their injuries at the hospital, Officer Cox performed a protective sweep of the residence to ensure there were no additional intruders or other victims in the residence, and to ensure the officers' safety as they continued to investigate. During this protective sweep, Officer

Cox observed in plain view what appeared to be a marijuana pipe in an upstairs bedroom. He also saw what appeared to be marijuana stems and seeds in plain view.

After confirming there were no other intruders, victims, or other sources of danger in the residence, Officer Cox exited the residence and continued to investigate. Officer Cox then performed an unsuccessful canine search of the area for the intruder. He also interviewed a neighbor who confirmed that she observed the Hazels in an altercation with an intruder and had witnessed the intruder flee from the scene. An evidence technician was called to the scene to take photographs, and IMPD Robbery Detective Timothy Dowdy ("Detective Dowdy") arrived on the scene for further investigation.

After a briefing by Officer Cox of what had occurred (including the protective sweep and seeing suspected marijuana stems, seeds and paraphernalia), Detective Dowdy, Officer Cox, and assisting IMPD officers re-entered the residence to look for evidence of the robbery, property taken, and method of entry by the intruder. It was during this entry that Detective Dowdy, while checking the downstairs area of the residence, observed broken glass from the garage area, which had been broken from the inside of the residence. While looking for signs of a struggle, the officers, including Detective Dowdy, noticed a bedroom on the second floor that was locked and had black plastic coming out from underneath the door.

Narcotics Detectives Steven Swarm ("Detective Swarm") and Michael Vitali ("Detective Vitali") were then called to the Devon Drive residence. At that point, Officer Cox was the only officer remaining on the scene. Upon Detective Vitali's arrival, Officer Cox told Detective Vitali what had occurred up until that point, including what he had observed during the protective sweep of the residence. Believing that there was enough probable cause to obtain a

search warrant, Detective Vitali obtained a warrant from Commissioner Cheryl Boone at the Marion County Arrestee Processing Center.

Once the search warrant was obtained, Detective Vitali and other narcotics officers searched the home and found the following:

(1) 300 marijuana plants in an upstairs room;

(2) two jars containing marijuana in the top drawer of a dresser, a third jar of marijuana on the night stand, a fourth glass jar of marijuana in the closet, and a glass smoking pipe containing marijuana on top of the chest of the drawers in the Hazels' bedroom;

(3) marijuana stems on the floor next to the bed, and white plates containing marijuana residue in the Hazels' bedroom;

(4) a loaded Charter Arms .38 Special Revolver, serial number 476877, in the bottom drawer of a dresser, along with an additional 116 rounds;

(5) a marijuana horticulture book on the night stand;

(6) two envelopes containing a total of $2,918 in the bottom drawer with the handgun;

(7) a bag of marijuana in the second bedroom;

(8) eight glass jars with marijuana in the locked upstairs room; and

(9) a clipboard with marijuana grow schedule.

When Officer McCauley arrived on the scene, he heard Mrs. Hazel say "she did not want anyone to go in her house". Officer Cox and Detective Vitali, however, at no time heard Mrs. Hazel make the statement. In fact, Officer Cox's declaration states that the Hazels made no attempt to prevent the protective sweep.

## II. DISCUSSION

The Hazel's move to suppress all evidence gathered as a result of the search executed under the search warrant. They contend the search warrant affidavit contains a material omission, and thus lacked probable cause to justify the issuance of a search warrant. They further contend that the entry into the residence was not a protective sweep as the warrant application claims, and thus qualifies as a warrantless entry under the Fourth Amendment. The Court will address each of these issues in turn.

### A. *Franks* Hearing on omissions in the Affidavit

In its Entry Granting Evidentiary Hearing (Dkt. 55) the Court found a *Franks* hearing was necessary to allow defendants to fully hear, test, challenge and controvert the evidence that surrounds the issuance of the search warrant. In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court "sets out the standards for challenging the validity of search warrants obtained with the help of factual misrepresentations" in affidavits. *United States v. Swanson*, 210 F.3d 788, 789 (7th Cir. 2000). The Court previously found the Hazels had made a substantial preliminary showing that the omission of a statement regarding the fact that the intruder had fled the home, could reasonably have affected the state court magistrate's finding of probable cause for the search warrant. The Hazel's now have the burden of demonstrating by a preponderance of the evidence that the search warrant must be voided and the fruits of the search suppressed. To do so, the Hazels must show that (1) the search warrant affidavit contained a false material statement or omitted a material fact; (2) the affiant omitted the material fact or made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement is material to the finding of probable cause. *United States v Lowe*, 516 F.3d 580, 584 (7th Cir. 2008).

### B. Probable Cause for a Search Warrant

In reviewing the issuance of a search warrant, "a magistrate's 'determination of probable cause should be paid great deference by the reviewing court.'" *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). The reviewing court does not review the magistrate judge's probable cause finding *de novo*, but only determines whether there is substantial evidence in the record to support the judge's decision to issue the warrant. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). Thus,

> [w]hen an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit. Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.

*United States v. Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003) (citations omitted). The Fourth Amendment only requires that the judge had a substantial basis for concluding that a search warrant was necessary to disclose evidence of a crime. *U.S. v. Cooper*, 2005 WL 2465252, at *2 (N.D. Ind. Oct. 4, 2005) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Finally, "doubtful cases should be resolved in favor of upholding the warrant." *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir. 1982); *see also United States v. McNeal*, 82 F. Supp. 2d 945, 951 (S.D. Ind. 2000).

The Hazels contend the issuing magistrate judge would not have authorized the warrant had she been provided with the information about the intruder fleeing the scene of the robbery. They contend if the alleged omission had been included in Detective Vitali's affidavit there would have been insufficient evidence to amount to probable cause for the issuance of the search warrant, and the magistrate would have been "left merely with the report of a robbery with injury

6

to both David and Allison and the somewhat suspicious behavior of Allison locking her front door." (Dkt. 45 at 8).

The Court disagrees. The affidavit of Detective Vitali contained much more information than just the report of a robbery, injury to the Hazels, and Mrs. Hazel's suspicious behavior of locking the front door. The affidavit stated that Officer Cox had been dispatched to the residence in response to a home invasion and that responding officers were unsure if the suspect was still on the scene. After Officer Cox spoke to the Hazels, he and the other officers entered the house to secure it, check for other possible victims, and check for suspects. It was during the protective sweep that Officer Cox noticed in plain view on an upstairs bedroom dresser a large green pipe with a burnt substance in it. Detective Vitali's affidavit stated that Officer Cox had the training and experience to recognize the pipe as paraphernalia used to smoke marijuana. The affidavit also stated that Officer Cox noticed what was immediately apparent to him, based on his training and experience, as marijuana stems and seeds lying out in plain view in the same bedroom.

Based on the foregoing statements in the affidavit, the search warrant was supported by probable cause even without the alleged omission that the intruder had fled the scene. The drug paraphernalia with a burnt substance in it and the marijuana stems and seeds lying out in plain view were evidence of a criminal violation, and implied there might be other such evidence in the residence. Evidence of drug paraphernalia and drugs lying out in plain view would give a reasonable person a substantial basis for concluding that evidence of a crime would be found within the residence, thus necessitating the officers' obtainment of a search warrant.

The Hazels seem to think that because they have attacked the officers' entry into the residence as unlawful, the affidavit's reference to Officer Cox's discovery of the drug paraphernalia and marijuana do not count. That is incorrect. The court's review of the

magistrate judge's probable cause determination for a search warrant is based on the information presented to her, not on that information minus any challenged evidence. *U.S. v. Cooper*, 2005 WL 2465252, at *2 (N.D. Ind. Oct. 4, 2005). "Whether the search was unlawful and whether the search warrant is fruit of that unlawful search are separate questions from whether the search warrant is supported by probable cause." *Id.* Since Detective Vitali's affidavit provided sufficient evidence for a reasonable person to conclude that a search of the residence would produce evidence of a crime, the search warrant itself was supported by probable cause. The evidence presented does not demonstrate that Detective Vitali made a false statement or material omission, which would have had an implication on the commissioner's finding of probable cause to search the residence.

### C. Constitutionality of the Protective Sweep

A protective sweep is a "quick and limited search of a premises" conducted to ensure the safety of police officers and others in the area. *U.S. v. Richards*, 937 F.2d 1287, 1291(7th Cir. 1991) (citing *Maryland v. Buie*, 494 U.S. 325 (1990)). It should be narrowly confined to a quick visual survey of the places where a person might be hiding. *Id.* The Fourth Amendment permits a protective sweep if the searching officer possesses a reasonable belief based on "specific and articulable facts" that the area swept harbored an individual posing a danger to the officer or others in the area. *Id.*

The Hazels argue that entry into the residence was not a protective sweep as the warrant application claims, and thus qualifies as a warrantless entry under the Fourth Amendment. *United States v. Rivera*, 248 F.3d 677, 680 (7th Cir. 2001) (citing *Payton v. New Payton v. New York*, 445 U.S. 573, 585-86 (1980), cert denied, 534 U.S. 923 (2001) (holding a warrantless entry into a private home constitutes a search and presumptively is unreasonable under the Fourth

Amendment)). This Court disagrees. In Officer Cox's testimony at the suppression hearing, he gave two reasons for conducting a protective sweep. First, he stated that he did not know if anyone else remained in the residence. Second, he stated that the run he heard from the dispatcher indicated there were two male voices in the background of Mrs. Hazel's 911 call. Given these two reasons, Officer Cox made a reasonable decision to sweep the residence for other possible intruders or victims. Moreover, Officer Cox's protective sweep was limited in scope. He did not search the dresser drawers or open any closed or locked doors during the sweep. He moved swiftly through the second level of the residence and the basement.

The evidence supports that Officer Cox and the other officers at the scene of the robbery possessed a reasonable belief on articulable facts that the inside of the residence posed a danger. Specifically, Officer Cox knew an armed assailant had fled the house moments prior to his arrival on the scene. When the three police officers arrived at the Hazels' home, they only knew they were walking into a robbery in progress. Upon arrival, the officers encountered the Hazels, both of whom were emotional and injured. The Court finds the protective sweep, entering the home with his weapon drawn to ensure the residence was free from intruders and any other possible victims, to be a completely reasonable course of action. The Court finds Officer Cox testimony that he did not attempt to enter the locked room as he believed the room was locked from the outside so that an intruder would not have been located in that particular room, to be credible testimony. Finally, the officers could not reasonably be expected to conduct a home invasion, armed robbery with injury investigation, without first ensuring their safety. While they knew from the Hazels and a neighbor that an intruder had fled the scene, they had no way of knowing whether the intruder had any cohorts hiding inside the residence.

## III.  CONCLUSION

The Hazel's summoned law enforcement officers to their home when they became victims of a crime. The officers who responded rightfully performed their jobs by conducting a protective sweep of the residence in their investigation of a home invasion and attempted armed robbery. Any omissions in the probable cause affidavit were not material and the officers' actions did not violate the Hazel's constitutional rights. For the reasons set forth above, Defendants' Motion to Suppress (Dkt. 43) is **DENIED**.

SO ORDERED.   03/02/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution to:

Michelle Patricia Brady
UNITED STATES ATTORNEY'S OFFICE
michelle.brady@usdoj.gov

James A. Edgar
J. EDGAR LAW OFFICES, PC.
jedgarlawyer@gmail.com

Vernon E. Lorenz
VERNON E. LORENZ, P.C.
vlorenz@vernonlorenzlaw.com